Alvin H. FRANKEL, Administrator of the Estate of Joseph Wright, deceased,

v.

Louise A. CROWLEY, Administratrix of the Estate of William Crowley, deceased.

MARYLAND CASUALTY COMPANY, as Subrogee to the rights of Walter Collison

v.

Louise A. CROWLEY, Administratrix of the Estate of William Crowley, deceased

and

Alvin H. Frankel, Administrator of the Estate of Joseph Wright, deceased.

MARYLAND CASUALTY COMPANY, Subrogee to the rights of Paul McDevitt

v.

Louise A. CROWLEY, Administratrix of the Estate of William Crowley, deceased,

and

Alvin H. Frankel, Administrator of the Estate of Joseph Wright, deceased.

MARYLAND CASUALTY COMPANY, Subrogee to the rights of John Owens

v.

Louise A. CROWLEY, Administratrix of the Estate of William Crowley, deceased,

and

Alvin H. Frankel, Administrator of the Estate of Joseph Wright, deceased.

Civ. A. Nos. 21236, 23141–23143.

United States District Court
E. D. Pennsylvania.

May 23, 1960.

Stephen J. McEwen, Upper Darby, Pa., for Maryland Casualty Co. as subrogee to the rights of Walter Collison, Paul McDevitt and John Owens.

J. H. Ward Hinkson, Edw. F. Cantlin, Chester, Pa., for Louise A. Crowley, Admx. of the Estate of Wiliam Crowley, deceased.

Freedman, Landy & Lorry, Martin Heller, Philadelphia, Pa., for Alvin H. Frankel, Admr. of the Estate of Joseph Wright, dec'd.

KRAFT, District Judge.

Following our adjudication of March 29, 1960, each of the plaintiffs moved the

court to amend its findings of fact Nos. 11, 13, 15, 24 and 25, and conclusions of law Nos. 7, 8 and 9 and moved, further, for re-argument. Re-argument and argument on the motions was heard on May 9, 1960. The essence of the plaintiffs' motions is that the court disregarded the testimony of John Owens on grounds which plaintiffs contend have no basis in the record.

After consideration of the arguments of counsel. and a careful review of the testimony of John Owens, we see no reason to modify our earlier findings of fact or conclusions of law. To what was said under "Discussion" in our adjudication we may add:

John Owens had been a police officer in the City of Chester since 1949 and was, we think it fair to infer, reasonably familiar, by 1955, with the nature and general purposes of questions asked by investigating officers and by the coroner about a motor vehicle accident.

Owens testified (p. 3) [1] that he recalled the events of August 27, 1955 up to a certain point. Plaintiffs' counsel urge that that point was the actual impact of collision. We concluded after hearing and observing this witness, that his absence of recollection included the events which immediately preceded the impact, despite some of his trial testimony to the contrary.

Owens testified (p. 20) that he was unconscious for approximately ten or twelve days. In reply to the question " * * * after you regained consciousness did the other police people and did the coroner ask you what you knew about the accident, how it happened?", Owens stated (p. 21) "It's in the coroner's inquest." He further said (p. 22) that he did testify at the coroner's inquest; that he did not remember whether he testified at the inquest substantially as he testified at this trial with respect to the traffic light.

The following appears in Owens' cross-examination (p. 23)

"Q. Do you remember the coroner's question: 'Will you tell us how this occurred? You were hospitalized.'

"And your answer: 'There is nothing I can say. I was out for about two weeks. I do not remember anything.'

"A. About the accident, that is correct.

"Q. And the coroner asking: 'Nothing that you can testify to?' And your answer: 'Nothing.' A. To the accident is correct."

We think specious the argument of plaintiffs' counsel that Owens by the foregoing answers, meant *only* that he remembered nothing *after* the impact.

When asked (p. 21) whether the investigating officer talked to him about how the accident happened, Owens replied "I don't know if he did." He was then asked "Do you remember telling him that you don't remember anything about the accident?" His reply was "That is kind of a complicated one to answer I think. The accident itself would happen and I was gone and that was it. If you want part of the accident, I know a little bit about that."

Following his discharge from the hospital Owens was so confused that (p. 62) he did not know the dates or days. In response to the question by his counsel (p. 63) "Did you recall anything about the accident at all? Did you remember the accident at all?" Owens replied "Not at that time."

Plaintiffs urge that Owens' confusion and conversations after his discharge from the hospital were related only to events which occurred during his period of unconsciousness. Owens' testimony (p. 65) does not support this contention. In answer to the question "Why did you

---

[1]. Page references are to transcript of Owen's trial testimony which is the only testimony plaintiffs ordered to be transcribed.

stay up that late? What was the reason for it?", Owens answered "I was confused in regards to the accident and other elements."

We think unrealistic the contention of counsel that Owens' wanderings and conversations with others related solely to events which occurred during his period of unconsciousness. Owens testified (pp. 67, 68) that he wandered about, visiting the fire house, a restaurant, the hospital or just wandered. It is inconceivable that, having been involved in a collision between two volunteer fire company vehicles involving the death of one fireman and serious injuries to others, Owens would never have discussed with associates at the fire house and with friends and acquaintances in a restaurant and in the course of his wanderings the cause, actual or imagined, of this tragic collision. Asked what was the purpose of going to the hospital, Owens answered "Trying to pick up the pieces of the accident concerning myself."

We were faced with a situation in which this witness, a police officer, testified at the coroner's inquest that he did not remember anything about the accident, and yet, more than four and one-half years later, purported at this trial, to remember, in detail, those important events which immediately preceded the collision and which, to the mind of any reasonable layman or police officer, would be embraced in the coroner's question "Will you tell us how this occurred?" Finding the testimony of Owens incredible on this score, we had the alternative of concluding that his trial testimony was deliberately fabricated or that his purported present recollection of the critical events was a recollection of information, actual or speculative, gleaned from other sources. Taking the more charitable view, we preferred to believe the latter.

### Order.

Now, May 23rd, 1960, after argument,

It is ordered that plaintiffs' motions to amend the court's findings of fact and conclusions of law be and they are denied.